UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

METRO PONY, LLC,

    Plaintiff,

v.

CITY OF METROPOLIS,

    Defendant.

Case No. 10-cv-144-JPG

**MEMORANDUM AND
TEMPORARY RESTRAINING ORDER**

This matter comes before the Court on plaintiff Metro Pony, LLC's motion for a temporary restraining order and a preliminary injunction (Doc. 3). The motion seeks to stay enforcement of an ordinance that is scheduled to go into effect February 25, 2011. Although defendant City of Metropolis has yet to be served with process or to appear in this case, Metro Pony faxed its attorney a copy of the complaint and the pending motion on February 22, 2011. The Court held a telephone status conference on February 23, 2011, at which Metro Pony's counsel and Metropolis's counsel were present. Counsel for Metropolis reported that the City would not agree to stay enforcement of the ordinance. Consequently, the Court considers Metro Pony's motion for a temporary restraining order.

**I.    Background**

This matter arose after Metro Pony, a business that offers live artistic dance performances that include nudity and sells DVDs of a sexual nature, began operations in Metropolis in December 2010. On February 14, 2011, the Metropolis city council passed Ordinance 2011-2 that, among other things, requires annual licensing of sexually oriented businesses and employees of those establishments, prohibits sexually oriented business operations from midnight to 6 a.m., establishes facility requirements regarding lighting, fencing, stages, room size, creates a misdemeanor crime for failure to comply with the ordinance, and

prohibits certain specific conduct like nudity, sex, getting within 6 feet of patrons, touching patrons or their clothing and consuming alcohol on the premises. The ordinance allows businesses lawfully operating prior to the ordinance's effective date a temporary, 30-day license to continue operations and to apply for the appropriate licenses and 180 days to bring its facility into compliance with the ordinance's requirements, although it imposes a 6-foot employee-patron distancing requirement in the meantime. It also allows the consumption of alcohol at sexually oriented businesses with a pre-existing liquor license until the license expires, but not thereafter.

The preamble to and body of the ordinance states that it is aimed at combating the negative secondary effects that stem from sexually oriented businesses and is not intended to deny access to sexually oriented entertainment.

## II. Analysis

When deciding a motion for temporary injunction, the Court applies the same standard as it does to a motion for a preliminary injunction. *Crue v. Aiken*, 137 F. Supp. 2d 1076, 1083 (C.D. Ill. 2001). Preliminary injunctive relief is designed "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortgage Corp. v. Platinum Fin. Group Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). A party seeking a preliminary injunction must make a threshold showing that (1) it has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) it will suffer irreparable harm if the injunction is not granted. *Ferrell v. United States Dep't of Housing and Urban Dev.*, 186 F.3d 805, 811 (7th Cir. 1999). If the moving party is able to establish these three factors, the Court must then balance the harms to both parties using a "sliding scale" analysis, also taking into consideration the effect that granting or denying the injunction will have on the public. "[T]he greater the moving party's likelihood of prevailing on the merits, the less strongly it must show

2

that the balance of harms weighs in its favor." *Ferrell*, 186 F.3d at 811. "A preliminary injunction is an extraordinary remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Chicago Dist. Council of Carpenters Pension Fund v. K & I Constr., Inc.*, 270 F.3d 1060, 1064 (7th Cir. 2001) (citing *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (per curiam)); *accord Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 376 (2008).

    A.    <u>Likelihood of Success on the Merits</u>

Metro Pony has demonstrated a likelihood of success on the merits on its First Amendment claim.

The First Amendment to the United States Constitution provides "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble. . . ." U.S. Const. amend. 1. The Due Process Clause of the Fourteenth Amendment makes First Amendment free speech and assembly guarantees applicable to states as well as the federal government. *Gitlow v. New York*, 268 U.S. 652, 666 (1925); *Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 707 (7th Cir. 2003).

On its face, Ordinance 2011-2 is a time, place or manner restriction. However, to decide whether to apply strict or intermediate scrutiny to the ordinance, the Court looks at the predominant purpose of the ordinance. If the predominant purpose is to decrease speech, the Court applies strict scrutiny. *RVS, L.L.C. v. City of Rockford*, 361 F.3d 402, 407 (7th Cir. 2004). However, if the predominant purpose is to decrease the secondary effects of the speech, but not the speech itself, the Court applies intermediate scrutiny. *RVS*, 361 F.3d at 407-08; *Ben's Bar*, 316 F.3d at 723; *see City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 440-41 (2002) (plurality); *Alameda Books*, 535 U.S. at 448-49 (Kennedy, J., concurring); *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986). In making the decision about the predominant purpose of

3

the regulation, the Court can consider "a wide variety of materials including, but not limited to, the text of the regulation or ordinance, any preamble or express legislative findings associated with it, and studies and information of which legislators were clearly aware." *RVS*, 361 F.3d at 410 n. 5 (internal quotations and citations omitted).

Assuming for the purposes of this motion only that the Metropolis city council enacted Ordinance 2011-2 to decrease secondary effects of speech as opposed to decreasing speech itself, the Court applies an intermediate level of scrutiny, that is, it asks whether the regulation is narrowly tailored to serve a substantial government interest while not unreasonably limiting alternative avenues of communication. *Alameda Books*, 535 U.S. at 434 (plurality); *Renton*, 475 U.S. at 47; *RVS*, 361 F.3d at 408-09. The Metropolis city council articulated several substantial government interests in the ordinance (e.g., the prevention of unlawful sexual activities, crime and urban blight), so the Court moves on to the question of whether there is a connection between the negative secondary effects and the regulated speech. *Alameda Books*, 535 U.S. at 441 (plurality); *RVS*, 361 F.3d at 408.

In *Alameda Books*, Justice Kennedy's concurrence breaks the question of whether there is a sufficient connection between the negative secondary effects and the regulated speech into two separate inquiries: (1) What is the proposition that a city needs to advance in order to sustain a secondary effects ordinance? and (2) How much evidence is required to support the proposition? *Alameda Books*, 535 U.S. at 449-50 (Kennedy, J., concurring); *RVS*, 361 F.3d at 408-09.

The proposition must be that the regulation of the speech reduces the secondary effects without causing the speech to cease. *Alameda Books*, 535 U.S. at 449 (Kennedy, J., concurring) ("[A] city may not assert that it will reduce secondary effects by reducing speech in the same proportion."); *RVS*, 361 F.3d at 411-12. Fundamental to this proposition is the assumption that

4

the regulated aspect of the speech (e.g., the regulated conduct, the lack of licensing) causes, or is reasonably believed to cause, the secondary effects. *See, e.g., RVS*, 361 F.3d at 411 (noting that the ordinance's premise must be that locating the speech in certain areas will significantly reduce secondary effects without diminishing the availability of the speech). In this case, the proposition must be that the objects of the restrictions in the ordinance cause negative secondary effects and that the restrictions will reduce those secondary effects without unreasonably limiting the protected speech.

A sufficient evidentiary connection between the speech regulation and the secondary effects is established "if the evidence upon which the municipality enacted the regulation 'is reasonably believed to be relevant for demonstrating a connection between [secondary effects producing] speech and a substantial, independent government interest.'" *RVS*, 361 F.3d at 408 (quoting *Alameda Books*, 535 U.S. at 438 (plurality) (internal quotations omitted)).

Metro Pony has pointed to gaps in the logical connection between some of the requirements of Ordinance 2011-2 and the secondary effects the Ordinance is purportedly designed to combat. Although the Metropolis city council cited numerous studies and judicial opinions supporting restrictions they imposed, it is not readily apparent that such evidence is relevant to the specific situation and specific restrictions in Metropolis such that those studies and opinions would fairly support its ordinance. *See Annex Books, Inc. v. City of Indianapolis, Ind.*, 581 F.3d 460, 462-63 (7th Cir.2009) (requiring studies to support causal connection in context of case at bar). For example, Metropolis cites *City of Littleton v. Z.J. Gifts D-4, LLC*, 541 U.S. 774 (2004), as supporting Ordinance 2011-2's licensing requirements, but that case involved only licenses of *businesses*, not of employees that worked in the businesses. Thus, the Court is skeptical that *Z.J. Gifts* provides any support for the employee licensing requirements at issue in this case. The Court believes there is a likelihood that Metro Pony can show that this

and other requirements of Ordinance 2011-2 are not logically connected by sufficient evidence with reducing the relevant secondary effects.

In addition, Metro Pony has presented sufficient evidence suggesting that the ordinance was designed to fundamentally destroy its business model and reduce secondary effects by causing it to close, a result not permitted by *Alemeda Books*.

For these reasons, and possibly others, it appears that Metro Pony has some likelihood of success on the merits of its claim.

B. No Adequate Remedy at Law/Irreparable Harm

Metro Pony has established that the impingement Ordinance 2011-2 will have on its First Amendment rights will cause irreparable harm for which there is no adequate remedy at law. "The loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate, and injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006); *see Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment rights for even minimal periods of time, unquestionably constitutes irreparable injury.").

The criminal liability created by Ordinance 2011-2 for failure to abide by or enforce the conduct requirements therein takes effect immediately on February 25, 2011. Indeed, the threat of such liability will have a chilling effect on the First Amendment expression at Metro Pony causing irreparable harm for which there is no adequate remedy at law.

C. Balancing the Harms

As noted above, Metro Pony will suffer harm from enforcement of Ordinance 2011-2 because it will chill its First Amendment speech rights. The public also suffers whenever First Amendment freedoms are not protected. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). Metropolis, on the other hand, is unlikely to suffer irreversible negative

secondary effects from the operation of Metro Pony until a full hearing on the motion for a preliminary injunction can be held. The balance of the harms weighs in favor of temporarily restraining enforcement of the ordinance from now until and including March 9, 2011. Metro Pony may apply for an extension of time if it believes it is warranted under Rule 65(b)(2).

Metro Pony has made a sufficient showing that it is entitled to a temporary restraining order to maintain the *status quo* until the parties are able to more fully present their respective cases to the Court for a more searching review.

### III. Conclusion

For the foregoing reasons, the Court:

- **GRANTS** Metro Pony's motion for a temporary restraining order (Doc. 3);

- **ENJOINS** the City of Metropolis from enforcing Metropolis Ordinance 2011-2 from now until and including March 9, 2011;

- **RESERVES RULING** on Metro Pony's motion for a preliminary injunction (Doc. 3);

- **CONSOLIDATES** the hearing on the motion for a preliminary injunction with the trial on the merits pursuant to Rule 65(a)(2); and

- **REFERS** this matter to Magistrate Judge Wilkerson for an expedited scheduling and discovery conference to facilitate the consolidated hearing.

**IT IS SO ORDERED.**
**DATED: February 24, 2011**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**